Barbara E. STAUFFER, Appellant

v.

**WEISENBERG TOWNSHIP BOARD OF SUPERVISORS.**

Commonwealth Court of Pennsylvania.

Argued Sept. 4, 2007.

Decided Oct. 26, 2007.

Kevin T. Fogerty, Allentown, for appellant.

Megan D. Dalton, Allentown, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Barbara Stauffer appeals an order of the Court of Common Pleas of Lehigh County (trial court) that affirmed in part, and reversed in part, the Weisenberg Township Board of Supervisors' (Board) conditional grant of Stauffer's Application for Final Subdivision or Land Development Plan (Plan). At issue is whether the Board was authorized by the Weisenberg Township Subdivision and Land Development Ordinance (SALDO) to require Stauffer to pave a road adjoining her property and to put in driveways as conditions to its approval of her Plan to create two lots out of a 17.6 acre parcel.

Stauffer is the owner of land that fronts on Old Route 22 in Weisenberg Township. The property also abuts Cemetery Road, a one-lane dirt road that connects Old Route 22 with Ziegel's Church Road. Reproduced Record at 25a. (R.R.——). On September 20, 2005, Stauffer filed her Plan with the Township, seeking approval to subdivide the 17.6 acre parcel into three lots, which she later amended to two lots. The Plan was referred to the Township engineer for review.

In an October 20, 2005, letter to the Township Planning Commission, Roy Stewart, the Township engineer, commented that Cemetery Road is a one-lane dirt road that would have to be reconstructed to accommodate Stauffer's Plan. This is because, Stewart stated, two cars cannot safely pass one another on the one-lane road. Stewart further noted that there were steep slopes on Stauffer's property that had to be considered when placing driveways on the proposed two lots. He recommended that Stauffer design and construct the driveways prior to sale lest the buyers build driveways with too steep a grade. Stewart's comments were incorporated into reports submitted to both the Planning Commission and the Board.

Stauffer's Plan was considered and reviewed by the Planning Commission and by the Board contemporaneously. At its February 23, 2006, meeting, the Planning Commission approved the Plan subject to Stewart's comments, now restated in a January 20, 2006, letter to the Planning Commission. Stewart stated, in relevant part, as follows:

1. Cemetery Road is a one-lane dirt road and is subject to a road improvement fee. There is an immediate safety issue caused by this development. Two cars cannot pass safely. The Township does not have funds to address the safety issue caused by this subdivision. This road must be re-constructed and improved to Township standards as

part of this subdivision (SALDO 902.M).

2. The proposed driveways with house locations are shown on Sheet 2. We recommend the developer, as part of the plan approval complete the construction [of the] driveways.

R.R. 29a.

At its March 13, 2006, meeting the Board approved Stauffer's Plan subject to certain conditions. Those conditions were set forth in the Board's letter of March 17, 2006, to Stauffer, and they are as follows:

1. Compliance with Township Engineer, Roy Stewart's letter of January 20, 2006.

2. SALDO Section 904(b)(3) Lots requires that all lots in a subdivision shall abut on a street in conformance with the standards of the Ordinance. As the road abutting your subdivision does not meet such standards, the road must be improved by you.

3. SALDO Section 902(b) Street Design Standards requires that local roads be twenty-feet wide with two feet shoulders on each side for a total of 24 feet. The road improvement must be to a width of 24 feet.

4. SALDO Section 902(l) Street Construction Standards requires that a public road be paved with 1.5″ Bit Wearing, 4″ BCBC on a 6″ 2A modified stone base. The road improvement must meet this construction standard.

5. In connection with the road improvement, you must extend the storm water pipe referenced on the Plan to the width of the road.

R.R. 3a–4a.

Stauffer did not object to the entire first condition, i.e., that she comply with Stewart's letter of January 20, 2006. Specifically, Stauffer agreed with Stewart's directive that she pay a fee that would represent her "fair share" of the cost of paving Cemetery Road relative to the other property owners with land abutting Cemetery Road. However, she objected to the other conditions and filed a land use appeal, asserting that the Board's conditions were arbitrary, capricious and resulted from an abuse of discretion. Stauffer also argued that the Township failed to comply with the notice requirements of Section 508(2) of the Pennsylvania Municipalities Planning Code (MPC).[1] In Stauffer's view, the Board's March 17, 2006, letter constituted an invalid rejection of her Plan that entitled her to a deemed approval of her Plan under Section 508(3) of the MPC, 53 P.S. § 10508(3).

The trial court rejected Stauffer's deemed approval contention. Relying on this Court's decision in *Koller v. Weisenberg Township*, 871 A.2d 286 (Pa.Cmwlth. 2005), the trial court held that Stauffer had to treat her conditional approval as a rejection. If she objected to the conditions, her only remedy was a land use appeal; she could not assert the "deemed approval" remedy. For the most part, the trial court also rejected Stauffer's objections to the conditions, but with respect to the condition that Stauffer comply with Stewart's January 20, 2006, letter, the trial court struck the sentence in Stewart's letter that stated that the Plan was "subject to a road improvement fee." Stauffer filed the present appeal.

On appeal,[2] Stauffer presents two issues

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

2. In a land use appeal, where the trial court has not taken any additional evidence, this Court's scope of review is limited to a determination of whether the governing body has

for our consideration.[3] First, she contends that the trial court erred in not striking all the contested conditions. She asserts that the Board failed to identify defects in her Plan with the specificity required by the MPC, rendering the Board's conditions void. Second, Stauffer contends the Board abused its discretion by imposing conditions that are not authorized under the SALDO.

Stauffer argues, first, that the Board's conditional approval of her Plan did not conform to Section 508(2) of the MPC, 53 P.S. § 10508(2), which states that "[w]hen the application is not approved in terms as filed," the written decision shall identify the defect in the application by citing the relevant statute or ordinance.[4] Stauffer asserts that the Board's failure to cite to the relevant ordinance or statute entitled her to treat the Board's decision as a deemed approval. We reject this argument because it is directly contrary to this Court's precedent.

In *Koller*, 871 A.2d 286, a developer, Dale R. Koller, received approval of his preliminary subdivision plan subject to conditions to which he objected. Koller appealed, and the trial court reversed.

Regarding the disputed conditions, the trial court held that the township was required to cite to the ordinance provisions that authorized the conditions. Because it did not do so, the township's conditions were invalid. Accordingly, the trial court held that the township's invalid rejection entitled Koller to a deemed approval of his plan under Section 508(3) of the MPC.

On appeal, this Court reversed the trial court. We held that the MPC does not require a township to support each condition with a citation to the statute or ordinance supporting the imposition of the condition. We explained that where a preliminary plan is approved with conditions not accepted by the developer, the conditional approval constitutes a rejection. The aggrieved applicant's sole remedy is to appeal to the trial court for a determination of whether the objected-to conditions are legal.

■ The Board approved Stauffer's Plan with conditions that Stauffer did not accept. Some of those conditions objectionable to Stauffer were, in fact, supported by references to SALDO and others were not. However, citations to the SALDO, or lack thereof, are of no mo-

---

committed an error of law or abused its discretion. *Koller v. Weisenberg Township*, 871 A.2d 286, 289 n. 2 (Pa.Cmwlth.2005).

3. Stauffer's issues have been reordered for resolution.

4. Section 508 of the MPC reads, in relevant part, as follows:

(2)When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

(3)Failure of the governing body or agency to render a decision and communicate it to the applicant within the time and in the

manner required herein shall be deemed an approval of the application in terms as presented.

53 P.S. § 10508(2) and (3). Section 503(9) of the MPC addresses a municipality's authority to conditionally approve subdivision and land development plan applications and states that a SALDO may include, *inter alia:*

Provisions for the approval of a plat, whether preliminary or final, subject to conditions acceptable to the applicant and a procedure for the applicant's acceptance or rejection of any conditions which may be imposed, including a provision that approval of a plat shall be rescinded automatically upon the applicant's failure to accept or reject such conditions within such time limit as may be established by the governing ordinance.

53 P.S. § 10503(9).

ment. Under *Koller*, Stauffer is not entitled to a deemed approval. Her remedy was to file a land use appeal, and she did so. *Koller* is controlling; its logic continues to be compelling; and Stauffer has offered no reason for this Court to revisit the merits of *Koller*.

We consider, next, Stauffer's second issue on appeal: whether the conditions imposed by the Board were authorized by the SALDO.[5] Specifically, Stauffer argues that the Board abused its discretion by requiring her (1) to reconstruct, widen and pave the entire length of Cemetery Road from Old Route 22 to Ziegel's Church Road even though her property abuts only part of the length of Cemetery Road and (2) to construct driveways on the two subdivided lots prior to their sale. Stauffer maintains neither of these conditions was authorized under the SALDO.[6]

The MPC authorizes a municipality to require a developer to construct sufficient roadways within a subdivision and to improve adjoining roads as necessary to handle the increased traffic generated by a development. Section 503(2)(ii) of the MPC, 53 P.S. § 10503(2)(ii).[7] Pursuant to this authority, the Township enacted Sec-

tion 902.M of the SALDO, entitled "Required Traffic Improvements," to require a developer to be responsible for certain "traffic improvements," such as new traffic signals and the paving of streets abutting the development. The purpose of these improvements is "to accommodate prospective traffic and to facilitate fire protection and to ensure that the access into and out of subdivisions and land developments is sufficiently safe." SALDO, § 902.M(1).

Relevant here is the Township's SALDO requirement that a developer pave a street that abuts the development. Section 902.-M(3) states, in relevant part, as follows:

3. If, in the determination of the Board of Supervisors, *there is a reasonable relationship between the need for an "on-site improvement" of a street and the traffic created* by a proposed subdivision or land development, *the applicant for such subdivision or land development shall be required to complete the needed improvement or fund his/her fair share of the cost of such traffic improvement* and to dedicate sufficient street right-of-way for needed improvements.

a. An applicant for any land development or *major subdivision*[8] *shall be*

5. A board may not condition its approval of a plan upon a developer meeting a standard not contained in statute or ordinance. *Appeal of Fiore*, 74 Pa.Cmwlth. 328, 459 A.2d 911, 912 (1983).

6. Stauffer argues that the improvements to Cemetery Road are not authorized by Sections 904(B)(3) or 902.M of the SALDO. She argues that although Section 904(B)(3) of the SALDO requires that "[a]ll lots shall abut on a street in conformance with the standards of this Ordinance," the SALDO does not require that all streets that abut a subdivision meet the Township's design standards. We need not address this issue.

7. Section 503(2)(ii) of the MPC states that a subdivision and land development ordinance may include

Provisions for insuring that … streets in and bordering a subdivision or land development shall be coordinated, and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection.
53 P.S. § 10503(2)(ii).

8. Stauffer's Plan is a "minor subdivision," which is defined in the SALDO to be a "division or development of a parcel of land into not more than three lots …" SALDO, § 202 (Definitions). By contrast, a major subdivision is "[a]ny subdivision of land which does not qualify as a "minor subdivision." SALDO, § 202 (Definitions).

*required to pave any existing unpaved street and widen the cartway and any shoulders of abutting streets to Township standards* to result in a minimum paved cartway width of 20 feet, plus 2 feet wide minimum shoulders on each side for total paved width of 24 feet, that are improved to specifications as provided elsewhere herein.

1) Where the Board of Supervisors determine that land owned by another entity on the other side of the street is likely to be developed in the near future, the Board of Supervisors may permit an applicant to only improve the street from the centerline of the street right-of-way inward towards the project's lot lines, provided that sufficient improvements would still be completed for public safety.

SALDO, Section 902.M(3) (emphasis added).

Stauffer's Plan replaces one lot with two, which means that instead of one driveway onto either Old Route 22 or onto Cemetery Road, there will be two. If the additional traffic generated by a second driveway creates a safety concern, Stauffer can be "required *to complete the needed improvement or fund her fair share* of the cost of such traffic improvement." SALDO, Section 902.M(3) (emphasis added). However, the Board may impose this requirement only "[i]f, in the determination of the Board of Supervisors, *there is a reasonable relationship between the need* for an 'on-site improvement' of a street *and the traffic created by a proposed subdivision* or land development." SALDO, § 902.M(3) (emphasis added).

Here, the Board made no findings whatsoever about what, if any, increase in traffic will be created by two lots where presently there exists one. The Board adopted the Township engineer's report, but the engineer did not state that the second lot would generate such additional traffic onto Cemetery Road that safety required its improvement. Stated otherwise, the Township engineer made no findings to support the conclusion of a reasonable relationship between the creation of a second lot on property between Old Route 22 and Cemetery Road and the need to pave, for the first time in Township history, all of Cemetery Road. At best, the engineer identified a present problem with Cemetery Road that had nothing to do with Stauffer's Plan.

■ Further, Stauffer can only be required to pave Cemetery Road where it abuts her property. The SALDO defines an "on-site improvement" as an improvement "constructed on the property *abutting the applicant's property.*" SALDO, § 902.M(4)(a) (emphasis added). Stauffer's property abuts approximately half the length of one side of Cemetery Road from Old Route 22 to Ziegel's Church Road; other properties abut the other side of Cemetery Road and the other half of Stauffer's side of Cemetery Road. Accordingly, even if the Board had made the necessary findings of a reasonable relationship, it could not require her to pave all of Cemetery Road.[9] Half of Cemetery Road does not abut Stauffer's property and its total improvement cannot, by any reading of the SALDO, constitute an "on-site improvement."

9. Indeed, the MPC does not authorize a municipality "to require as a condition for approval of a land development or subdivision application the construction, dedication or payment of any offsite improvements...." Section 503–A(b) of the MPC, 53 P.S. § 10503–A(b).

We turn, next, to the Board's condition that Stauffer construct the driveways for the two subdivided lots. Stauffer contends that the Board did not have the authority to require her to construct the driveways for the two lots prior to their sale or start of any construction. In response, the Township contends that this construction was necessary to allow for egress and ingress to Stauffer's property.

The Board points to Section 902.M(4)(a) of the SALDO as authority for its driveway condition. Section 902.M(4)(a) states:

The following shall be [the] definition of "on-site improvement," (unless this definition is amended by State law):

all street improvements constructed on the applicant's property, or the improvements constructed on the *property abutting the applicant's property necessary for the ingress or egress to the applicant's property.*

SALDO, § 902.M(4)(a) (emphasis added). The Township engineer's recommendation had nothing to do with traffic ingress and egress to Stauffer's property. Rather, the engineer recommended constructing the driveways because of concerns about the grade of an errantly placed driveway on the steeply sloping property.

■ Section 903 of the SALDO regulates "all new private driveway construction and improvements to existing driveways." SALDO, § 903.A (1).[10] It specifically addresses driveway grade and design.[11] SALDO, § 903.C. No driveway can be built without a permit.[12] However, the SALDO nowhere requires the construction of a driveway before a lot in a minor subdivision is sold. The Board exceeded its authority with respect to the driveway condition. It can, of course, refuse to issue a permit for the construction of a driveway with too steep a grade if, and when, either Stauffer or her successor-in-interest seeks to build a driveway on one of the two lots.

■ The Board did not make findings relevant to whether there is a reasonable relationship between the traffic generated by Stauffer's Plan and the need to pave Cemetery Road. Accordingly, it had no authority to require Stauffer to pave Cemetery Road as a condition of its approval of her Plan. Notably, Stauffer did not object to the condition that she pay a fee for her fair share of paving Cemetery Road, and this was the condition stricken by the trial court. We reverse the trial court, which leaves effective the condition to the Board's approval of the Plan that Stauffer pay a road improvement fee for her fair share of the cost of paving Cemetery Road.

10. Section 903.A(1) more fully provides in relevant part:
This section shall apply to all new private driveway construction and improvements to existing driveways. Driveway improvements including paving, repaving, widening for purposes of adding another lane, changing or modifying a driveway entrance....

11. Section 903.C provides:
The centerline grade of any private driveway shall not exceed 11% at any point from the leveling area to any other point within the confines of the lot. A leveling area shall be provided having not greater than a 4% grade for a distance of 25 feet measured from the leveling area.
SALDO, § 903.C.

12. The SALDO states that "[n]o person ... shall perform any construction, excavation or other work in connection with any driveway ... until the Township shall have issued a Permit for such work." SALDO, § 903.D(1). It appears that the permitting process, prior to construction, may be the more appropriate vehicle for addressing the Township engineer's concerns.

## ORDER

AND NOW, this 26th day of October, 2007, the order of the Court of Common Pleas of Lehigh County dated December 5, 2006 in the above captioned matter is hereby REVERSED.